576 So.2d 842 (1991)
FLORIDA PUBLISHING COMPANY, As Owner of the Florida Times-Union, and Paul Pinkham, a Reporter, Petitioners,
v.
The Honorable Alban E. BROOKE, Respondent.
No. 90-3459.
District Court of Appeal of Florida, First District.
March 13, 1991.
*844 Robert M. Dees of Gabel, Taylor & Dees, Jacksonville, for petitioners.
Robert A. Butterworth, Atty. Gen., and Arthur C. Wallberg, Asst. Atty. Gen., for respondent Brooke.
Cynthia L. Nichols, Jacksonville, for respondent E.B.
Lewis H. Buzzell, III, Asst. Dist. Legal Counsel, for respondent Department of Health and Rehabilitative Services.
PER CURIAM.
Petitioners, Florida Publishing Company, owner of the Florida Times-Union, a daily newspaper in Jacksonville, and Paul Pinkham, a reporter for the newspaper, ask this court to review an order of the Circuit Court for Duval County which prohibits them from publishing the contents of a certain letter. Finding merit to their claims, we grant the petition.

I. INTRODUCTION
A dependency proceeding involving E.B. is pending before the circuit court. Section 39.408(2)(c), Florida Statutes (1989) provides in pertinent part:
All hearings, except as hereinafter provided, shall be open to the public, and no person shall be excluded therefrom except on special order of the judge, who, in his discretion, may close any hearing to the public when the public interest or the welfare of the child, in his opinion, is best served by so doing. All hearings involving unwed mothers, custody, sexual abuse, or permanent placement of children shall remain confidential and closed to the public.
We are not informed of the circumstances of the proceedings below, but apparently E.B.'s case does not involve an unwed mother, custody, sexual abuse, or permanent placement. The Honorable Alban E. Brooke, presiding judge in the E.B. dependency proceeding, however, determined closure of the hearing was in the public interest and/or served the welfare of the child. Petitioners do not contend this decision was an abuse of discretion.
On November 2, 1990, a licensed psychologist who was working with E.B. wrote a letter to an official of the Department of Health and Rehabilitative Services (HRS) that was sharply critical of certain actions of HRS and its employees in handling E.B.'s case. Copies of the letter were sent to Judge Brooke and to Cynthia Nichols, attorney ad litem for E.B. Although the record before us is not entirely clear, it appears that Judge Brooke then provided copies of the November 2 letter to other counsel of record in the cause. Among the recipients was counsel for E.B.'s mother and apparently he gave a copy of the letter to his client. In the courthouse immediately before a hearing on November 8, 1990, E.B.'s mother discussed the letter with Mr. Pinkham and provided him with a copy. Judge Brooke was informed of this development and a brief hearing was convened where the decision to close the hearing scheduled for that time was announced. After the merits hearing, the press returned to the courtroom and it was ordered that publication of the letter was prohibited. Florida Publishing Company and Pinkham subsequently moved to set aside the restraining order. After considering written memoranda of law and oral argument of counsel, the motion was denied. The petition to this court followed.

II. JURISDICTION
We first briefly discuss the question of our jurisdiction. Petitioners seek to rely on Rule 9.100(d), Florida Rules of Appellate Procedure, or alternatively apply for a writ of certiorari. We acknowledge that there is authority for us to take jurisdiction of this cause as a petition to review an order excluding the press or public from a proceeding or judicial records. See Sarasota-Herald Tribune v. J.T.J., 502 So.2d 930 (Fla. 2d DCA 1987); Florida Freedom Newspapers, Inc. v. McCrary, 497 So.2d 652 (Fla. 1st DCA 1986), approved, 520 So.2d 32 (Fla. 1988); Miami Herald Publishing *845 Co. v. Morphonios, 467 So.2d 1026 (Fla. 3d DCA 1985). We prefer to read the rule literally, however. As the petitioners complain of an order that restrains publication of information in their possession, rather than an order limiting their access to information, we elect instead to treat the petition as one seeking a writ of certiorari.

III. APPLICABILITY OF STATUTORY PROVISIONS
We next address the question of whether the action of the trial judge was authorized by statute. Sections 39.408(2)(c) and 39.411(3) and (4) concern the closure and confidentiality of juvenile dependency proceedings and records.

A. Section 39.408(2)(c), Florida Statutes
Section 39.408(2)(c), as quoted above, authorizes a trial court to order a dependency proceeding closed in the judges' discretion and requires that certain dependency proceedings "remain confidential and closed to the public." Judge Brooke stated on the record that E.B.'s proceeding is not one that qualifies for automatic closure and confidentiality under the latter portion of the statute. Thus, the extent of his statutory authority was to close the proceeding. Closure was ordered but that is not the judicial action of which petitioners complain. We therefore conclude that Judge Brooke's action was not authorized by section 39.408(2)(c).[1]

B. Section 39.411, Florida Statutes
Section 39.411, Florida Statutes, provides in pertinent part:
(3) The clerk shall keep all court records required by this part separate from other records of the circuit court. All court records required by this part shall not be open to inspection by the public. All records shall be inspected only upon order of the court by persons deemed by the court to have a proper interest therein, except that, subject to the provisions of s. 63.162, a child and the parents or legal custodians of the child and their attorneys, law enforcement agencies, and the department and its designees shall always have the right to inspect and copy any official record pertaining to the child. The court may permit authorized representatives of recognized organizations compiling statistics for proper purposes to inspect and make abstracts from official records, under whatever conditions upon their use and disposition the court may deem proper, and may punish by contempt proceedings any violation of those conditions.
(4) All information obtained pursuant to this part in the discharge of official duty by any judge, employee of the court, authorized agent of the department, correctional probation officer, or law enforcement agent shall be confidential and shall not be disclosed to anyone other than the authorized personnel of the court, the department and its designees, correctional probation officers, law enforcement agents, and others entitled under this chapter to receive that information, except upon order of the court.
We do not find that a plain reading of these statutory provisions allows them to serve as authority for Judge Brooke's restraining order. Although a copy of the letter was provided to the court, the original is simply correspondence between a treating psychologist and an HRS employee and we find therefore it is not a "court record" for purposes of section 39.411(3). Subsection (4) uses the broader phrase "[a]ll information obtained pursuant to this part", which arguably covers this letter. Nevertheless, neither E.B.'s mother nor her counsel are a "judge, employee of the court, authorized agent of the department [HRS], correctional probation officer, or law enforcement agent" and the restraining order is not authorized by section 39.411(4). We are therefore compelled to the conclusion that Judge Brooke's order is not authorized by *846 statute and must be considered strictly judicial in nature.

IV. JUDICIAL PRIOR RESTRAINT
Petitioners argue that Judge Brooke's prior restraint of publication of materials available to them is violative of their guarantees of freedom of expression as enumerated in the First Amendment to the United States Constitution and Article I, section 4 of the Florida Constitution. We must agree. Prior restraints have been described as presumptively unconstitutional. Nebraska Press Association v. Stuart, 427 U.S. 539, 558, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683, 697 (1976). Although a government may deny access to information and punish its theft, government may not prohibit or punish the publication of the information once it falls into the hands of the press unless the need for secrecy is manifestly overwhelming. Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 849, 98 S.Ct. 1535, 1546, 56 L.Ed.2d 1, 17 (1978) (Stewart, J., concurring); see also Oklahoma Publishing Co. v. District Court in and for Oklahoma County, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). In the instant case, the judge's written order made no findings as to the need for the restraint of the press. At the hearing, Judge Brooke orally expressed his concern that E.B. could be injured by the publication of the letter, but he was not specific as to what the possible injury might be. In an analogous situation, the protection of a juvenile from the adverse effects of the publication of his name was held not to be a sufficiently strong state interest to withstand a First Amendment challenge. Smith v. Daily Mail Publishing Co., 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979).
Further, there is no indication in the record before us that Judge Brooke gave proper consideration to less stringent measures to protect E.B. Such consideration is constitutionally required under the circumstances presented here. Nebraska Press Association, 427 U.S. at 562, 96 S.Ct. at 2804, 49 L.Ed.2d at 699. At hearing Judge Brooke gave permission to publish a "generic" article but that was not incorporated in his written order. Petitioners maintain they cannot truthfully and fully report on the matter under these conditions and, without further elaboration from the trial court as to what constitutes a "generic" article, we cannot view this as an acceptable alternative to the imposition of restraint.

V. CONCLUSION
For the reasons stated above, we agree with petitioners that Judge Brooke's restraining order is violative of constitutional guarantees of free speech and press. Accordingly we grant the petition and quash the order.
IT IS SO ORDERED.
ERVIN, WIGGINTON and MINER, JJ., concur.
NOTES
[1] We do not reach the issue of whether, if E.B.'s case were one involving an unwed mother, custody, sexual abuse, or permanent placement, the trial judge's statutory authority to order the hearing to remain confidential would authorize the order in question and, if so, whether the statute as applied could withstand constitutional attack.