734 So.2d 1162 (1999)
Isabella RODRIGUEZ, a minor, By and Through her mother and natural guardian, Penny POSSO-RODRIGUEZ, and Henry Rodriguez, and Penny Posso-Rodriguez, individually, Petitioners,
v.
Richard J. FEINSTEIN, M.D. and Richard J. Feinstein, M.D., P.A. Respondents.
No. 98-2430.
District Court of Appeal of Florida, Third District.
June 9, 1999.
*1163 Aronfeld & Associates, P.A.; Hersch & Talisman, P.A. and Patrice A. Talisman, Miami, for petitioners.
O'Connor & Meyers, P.A. and David R. Cassetty, for respondents.
Before COPE, GREEN, and FLETCHER, JJ.
PER CURIAM.
By way of a petition for writ of certiorari, the petitioners, who are the plaintiffs in the medical malpractice action below, seek review of an order immediately enjoining them and/or their counsel from discussing any matters or issues involved in this case with the media without leave of court. We have jurisdiction to review this matter as the order implicates a violation of the parties' constitutional rights which cannot be remedied on plenary review. See Times Publ'g Co. v. State, 632 So.2d 1072, 1073 (Fla. 4th DCA 1994); Florida Publ'g Co. v. Brooke, 576 So.2d 842, 844-45 (Fla. 1st DCA 1991).[1] We quash the order under review based upon our conclusion that it departs from the essential requirements of the law.
This medical malpractice action was filed based upon allegations that the respondents, Dr. Richard J. Feinstein and Richard J. Feinstein, M.D., P.A., prescribed medication known as Sporanox to the petitioner, Penny Posso-Rodriguez, without warning her not to become pregnant while taking this medication. The complaint further alleges that as a result, Mrs. Posso-Rodriguez's *1164 daughter, petitioner Isabella Rodriguez, was born with an abnormality of the right eye. Dr. Feinstein testified during his deposition that it was his general practice to warn all of his female patients of child bearing years of the dangers of using Sporanox. Thereafter, in an apparent effort to impeach or discredit this testimony, the petitioners placed an advertisement in the Miami Herald wherein their counsel sought to interview any woman who had been prescribed Sporanox by Dr. Feinstein.[2] Additionally, Ms. Posso-Rodriguez and her representatives were interviewed by a local news broadcast and the "Today Show" approached her for a future interview.
Dr. Feinstein moved for a protective order "prohibiting Plaintiffs' counsel from discussing with the media any and all issues with regard to this ongoing action." The trial court conducted an emergency telephone hearing on the motion the next day. No evidence other than the newspaper advertisement itself was presented to the court. The court made no review of the text of any statement(s) made by the petitioners or their counsel in published stories or news broadcasts. At the hearing, counsel for the petitioners offered to the court that no further advertisements would run and that petitioners would limit any future media communications to a discussion of their own personal experience, without mentioning Dr. Feinstein by name, and warning others of the potential risks associated with the medication. The trial court, apparently guided by its general aversion to any discussion of any pending cases in the media[3] granted the motion for protective order as follows:
The motion for Protective Order is GRANTED. Plaintiffs are prohibited from discussing this case in the media, effective as of the hearing on August 20, 1998, and Plaintiffs must obtain leave of Court prior to placing further advertisements.
The petitioners argue, and we agree, that this order is violative of the exercise of their First Amendment rights where the court made no findings that it was necessary to ensure a fair trial and where it was not narrowly tailored to preclude only extra-judicial statements which are substantially likely to materially prejudice the trial. It is axiomatic, of course, that a court may take steps to protect against pretrial publicity. See Sheppard v. Maxwell, 384 U.S. 333, 348, 86 S.Ct. 1507, 16 L.Ed.2d 600 (Fla.1966); Sentinel Communications Co. v. Watson, 615 So.2d 768, 769 (Fla. 5th DCA 1993). However, "pretrial publicity even pervasive, adverse publicity does not inevitably lead to an unfair trial.". Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). There must be a determination by the court on a case by case basis. See United States v. Lehder-Rivas, 667 F.Supp. 827, 828 (M.D.Fla.1987). In Florida, the limitations imposed by the court on communications between the media and lawyers and/or litigants must be for good cause to assure fair trials. See State ex. rel. Miami Herald Publ'g Co. v. McIntosh, 340 So.2d 904, 910 (Fla.1976); see also *1165 Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32, 35 (Fla.1988); Reiter, 563 So.2d at 751.
Specifically, with regards to counsel for the petitioners, we note that the United States Supreme Court in Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), has recognized that so-called "gag orders" can similarly run afoul of the lawyer's First Amendment rights. There, the court examined a Nevada Supreme Court rule that restricted lawyers from making extra-judicial statements if the "lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing" a proceeding. The Court held that the "`substantial likelihood of material prejudice standard' constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials.". Id. at 1075, 111 S.Ct. 2720. Thus, following Gentile, both federal and state courts have held that gag orders imposed upon attorneys and litigants are only proper if the restraint on speech is narrowly tailored to achieve the objective sought. See United States v. Salameh, 992 F.2d 445, 447 (2d Cir.1993) (holding order barring counsel from publicly discussing any aspect of action set aside where it was a blanket prohibition, rather than narrowly tailored); see also Breiner v. Takao, 73 Haw. 499, 835 P.2d 637, 641 (1992) (finding order prohibiting counsel from communicating with media regarding any aspect of the trial held constitutionally impermissible); Keene Corp. v. Abate, 92 Md.App. 362, 608 A.2d 811, 815-16 (1992) (holding order prohibiting defendant from advertising views on asbestos litigation in general and not addressing merits of particular case improper absent a showing that it would pose serious and imminent threat to the fair administration of justice and where it was not narrowly tailored to exact needs of case). The Florida Supreme Court approved the standard enunciated in Gentile in 1994, in The Florida Bar re: Amendments to Rules Regulating The Florida Bar, 644 So.2d 282, 283 (Fla. 1994), by incorporating the standard into Rule 4-3.6.
Here, the order under review is broad in scope and we conclude that there has been no showing that it was necessary to preclude a substantial likelihood of material prejudice to the trial of this case. There was no evidence presented or findings made that any extra-judicial statements or proposed extra-judicial statements made to the media by counsel or the parties posed a substantial and imminent threat to a fair trial. Moreover, the order under review is a broad blanket "gag order" which was not narrowly tailored to protect the fairness of this particular trial. The court never considered less restrictive alternatives, although petitioners' counsel offered the same. We further note the absence of any time or scope limitations on the prohibited extra-judicial communications. Conceivably then, this order would preclude extra-judicial statements made long after the case was tried or settled.
For all of these reasons, we conclude that the order is a departure from the essential requirements of the law and we grant the petition. The order under review is accordingly quashed.
Petition granted.
NOTES
[1] We agree with petitioners that because the subject order is in the nature of an injunction, it alternatively is reviewable as a non-final order granting an injunction pursuant to rule 9.130(a)(3)(B), Florida Rules of Appellate Procedure. See Stanfield v. Florida Dep't of Child. & Fam., 698 So.2d 321, 322 (Fla. 3d DCA 1997); Reiter v. Mason, 563 So.2d 749, 750 n. 2 (Fla. 3d DCA 1990).
[2] The advertisement read as follows:

Attorney Spencer Aronfeld is seeking interviews with any woman between the ages of 18-40 who saw Dermatologist Dr. Feinstein and received any medication from him.
Particularly, patients given the drug SPORANOX by Dr. Feinstein please call Attorney Aronfeld ...
[3] The trial judge stated:

* * *
I don't think that this is a matter that should be discussed or tried in the media with each side saying their own side, and I think what we need to do in this case is not to do anymore of this, and if somebody feels that they have a need to go back to the media for some reason or file additional ads, I would ask that you please get leave of Court.
* * * *
It seems to me that the appropriate time to go before the media is after a jury has decided, especially, with something like the Today Show where I have no doubt that they have a large listening audience in the Dade County area.
* * *