DOW JONES & COMPANY, INC., Publisher of the Wall Street Journal, The New York Times Company, Publisher of the New York Times, et al., Plaintiffs-Appellees,

v.

Robert P. KAYE, in his official capacity as Circuit Court Judge for the Eleventh Circuit of Florida, Defendant-Appellant.

No. 00-12390.

United States Court of Appeals,

Eleventh Circuit.

July 12, 2001.

Appeal from the United States District Court for the Southern District of Florida.(No. 00-00962-CV-AJ), Adalberto Jordan, Judge.

Before EDMONDSON, DUBINA and POLITZ*, Circuit Judges.

EDMONDSON, Circuit Judge:

This case requires us to consider whether a challenge in federal court to a gag order issued in state court is moot. The final judgment has been entered on the state case, but the parties have appealed to the state appellate court. We conclude that this appeal is moot and dismiss for lack of jurisdiction.[1]

I.

This case arises out of a widely publicized product-liability lawsuit filed in a south Florida state court against some tobacco companies. The suit sought to recover damages for cigarette addiction. *See generally Engle v. R.J. Reynolds Tobacco Co.,* No. 94-8273 (Fla. 11th Jud. Cir. Ct.). Judge Robert Kaye presided over the state proceedings.

Class plaintiffs[2] filed the *Engle* complaint in 1994. In October 1998, after jury selection concluded for the liability phase of *Engle,* Judge Kaye entered this gag order:

> All parties and their agents shall adhere to the Florida Rules of Professional Conduct. All parties and their agents are prohibited from holding any public meetings and/or press conferences or briefings which relate to any facts or issues concerning this case. In addition, no party nor their agents are to make any public statement, written or oral, which pertains to any court proceedings in this case, including any part[y's] version of the facts, issues, merits, and theories of the case. All parties will

---

*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]Also on appeal are questions of *Younger* abstention—see *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)—and a First Amendment challenge to the gag order. Because we conclude that the case is moot, we say nothing about the substance of these two issues.

[2]The class plaintiffs in the underlying *Engle* litigation are not parties to the federal-court litigation.

also refrain from publically characterizing any party or witness in this case.

Judge Kaye entered the gag order when he learned that some of the defendant-tobacco companies planned a press conference and had already issued a press release about the trial. Judge Kaye held a hearing with the parties to discuss the gag order before it was issued. But, he prohibited the media from attending the hearing. The state-court parties acquiesced in and contributed to the phrasing of the written gag order.

Over a year later, after the liability phase of *Engle* ended and during the compensatory damages phase, some of the tobacco companies moved to vacate the gag order. Judge Kaye denied the motion, and the state appellate court sustained the gag order. *See R.J. Reynolds Tobacco Co. v. Engle,* 750 So.2d 781, 781 (Fla. 3rd D.C.A.2000). The state appellate court also denied media-entity Dow Jones's motion to intervene in the appeal; Dow Jones participated as amicus curiae in the state appeal.

In March 2000, Dow Jones and several other media entities (collectively, "media") filed a complaint against Judge Kaye in federal court, claiming that the 19-month old gag order violated a First Amendment right to gather and to disseminate news. As relief, the media requested that the district court "enter a permanent injunction immediately dissolving the gag order." The media also filed an Emergency Motion for a Temporary Restraining Order, requesting that Judge Kaye "be restrained from enforcing [the] 'gag order' " that he entered in the *Engle* litigation. Judge Kaye presented a defense. In April 2000, the district court denied Judge Kaye's motion to dismiss and granted the media's preliminary injunction, saying "Judge Kaye is enjoined from enforcing the gag order." Judge Kaye then filed this appeal.

Meanwhile, in the state court, the *Engle* trial ended in July 2000 with a $145 billion punitive damages award. Based on this development in the state trial, the media moved to dismiss this appeal as moot. Judge Kaye countered that this case was within the capable-of-repetition-yet-evading-review exception to mootness.

The tobacco companies now have appealed the jury verdict and damage awards to the state appellate court. At oral argument, we requested supplemental briefing to allow the parties to explain the effect of the state appeal on our question of mootness.

## II.

Our jurisdiction is limited, by the Constitution, to "cases" and "controversies." U.S. Const. Art. III § 2. As the Supreme Court has explained, a justiciable controversy "must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

A.

"A claim for injunctive relief may become moot if:  '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations.' "  *Reich v. Occupational Safety & Health Review Comm'n,* 102 F.3d 1200, 1201 (11th Cir.1997) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)).  When we consider our jurisdiction for mootness, we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued.  *See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998) ("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief.").

For now, at least, because final judgment has been entered and the state case is on appeal, Judge Kaye no longer has jurisdiction to enforce the gag order.  *See Harrell v. State,* 197 So.2d 505, 506 (Fla.1967); *Parsons v. Whitaker Plumbing of Boca Raton,* 730 So.2d 839, 840 (Fla. 4th D.C.A.1999);  *see also* Fla. R.App. P. 9.600(b).  Although the gag order, on its face, makes no reference to when the gag order would expire, Florida law precludes Judge Kaye from enforcing the gag order now that he has no jurisdiction over the parties.[3]  Thus, the gag order, which the media complained prohibited the parties from speaking to the media, no longer seems to prohibit the parties from speaking to the media.  So, interim acts have completely and irrevocably eradicated the effects of the alleged violation.

But Judge Kaye argues that a reasonable expectation exists that the alleged violation will recur

---

[3]Judge Kaye, citing *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176 (11th Cir.1994), argues that the district court's preliminary injunction enjoined the "entire state judiciary, including the Florida appellate courts," because the media sued Judge Kaye in his official capacity.  But when we said in *Hill* that "[o]fficial capacity suits represent only another way of pleading an action against an entity of which an officer is an agent," *id.* at 1184 n. 16 (quoting *Hobbs v. Roberts,* 999 F.2d 1526, 1530 (11th Cir.1993)), we were talking about qualified immunity and money damages, not injunctive relief.

An injunction against a single state official sued in his official capacity does not enjoin all state officials from the prohibited conduct. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State.").  The district court's preliminary injunction against Judge Kaye does not enjoin every other Florida state judge from enforcing a similar gag order.

because the Florida appellate court could remand the case for retrial.[4]  We accept that every state trial-court decision in Florida may be subject to reversal or remand by a higher state court.  But, we will not presume, or even suggest, that the trial conducted by Judge Kaye was conducted in error.[5]  Our presumption, in fact, goes in the opposite direction, that is, that the state trial-court proceedings complied with the law or, at least, contained no reversible error.  While we recognize that remand or reversal is a procedural possibility, we refuse to overcome the jurisdictional bar of mootness by concluding that we have a reasonable expectation that a state trial court's decision will be reversed or remanded.  *See Nationwide Mut. Ins. Co. v. Burke,* 897 F.2d 734, 739-40 (4th Cir.1990) (concluding case moot, based on intervening events by state court, even though "state court determination may yet be subject to appeal and possibly to reversal").

So, we conclude that the media's First Amendment challenge to Judge Kaye's gag order in the *Engle* case is moot because it presents no live case or controversy.

B.

This initial conclusion of mootness, however, does not end our inquiry.  Judge Kaye has argued that this case fits within one of the exceptions to the mootness doctrine;  he says it is capable of repetition yet evading review.  *See B&B Chem. Co., Inc. v. United States Envtl. Prot. Agency,* 806 F.2d 987, 990 (11th Cir.1986).  This exception applies, Judge Kaye argues, because similar disputes between media and Florida state judges—including him—about gag orders are likely to arise in the future and, because of the gag orders' short-lived nature, these gag orders will likely expire before completion of the federal appellate process.

---

[4]This case is different from many of the cases cited by Judge Kaye that conclude a case is not moot because a reasonable expectation of recurrence exists.  *See, e.g., City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 1390, 146 L.Ed.2d 265 (2000) (reasonable expectation of recurrence even though strip club owner sold strip club and was no longer involved in nude dancing industry);  *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 2197, 40 L.Ed.2d 566 (1974) (reasonable expectation of recurrence even though union abandoned organizing efforts pending First Amendment challenge).  Those cases involve voluntary cessation of the challenged activity.  Often, when a party has voluntarily stopped challenged activity in the face of a lawsuit, a reasonable expectation may exist that the party will resume that activity if the case is dismissed as moot.

> Here, however, the *Engle* trial concluded;  and the gag order's force expired due to the natural progression of the litigation, not because of the voluntary acts of one party (although we recognize that Judge Kaye, as presiding judge, somewhat controlled the litigation's speed).  So, we read the cases dealing with voluntary cessation as materially different from this one.

[5]We do not mean to rule that the *Engle* case was correctly or incorrectly decided.  That decision is one for the Florida appellate system, and perhaps even the United States Supreme Court, to decide.  We only mean that, for purposes of determining whether a federal case is moot, we are unwilling to say that pendency of a state appeal inherently means a reasonable expectation exists that a state trial court judgment will be reversed or remanded by that state's appellate courts.

The narrow capable-of-repetition exception only applies in "exceptional situations," *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983), where "1) the challenged action is too short in duration to be fully litigated prior to its cessation or termination, and 2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[6] *B&B Chem. Co.,* 806 F.2d at 990.

Judge Kaye relies on a series of Supreme Court cases and on one Eleventh Circuit case to say that this case falls within the exception. *See Globe Newspaper Co. v. Superior Court for Norfolk Co.,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *News-Journal Corp. v. Foxman,* 939 F.2d 1499 (11th Cir.1991). In all of these cases, the federal courts applied the capable-of-repetition-yet-evading-review exception to conclude that media's challenges to a state-court restrictive order were not moot even though the pertinent trial or hearing had ended and the restrictive order had expired. These cases are distinguishable and do not require us to apply the capable-of-repetition exception to this case. We are not convinced that a future repetition of the interplay of the state and federal orders like the one in this civil case is likely to escape review.

First, the underlying litigation in the precedents involved criminal trials, but the *Engle* case is a civil case. This fact is important for two reasons. First, while a gag order may be permitted in civil cases, given that all of the cases cited by Judge Kaye are criminal cases, it seems that gag orders are more common in criminal cases; so, there may be less chance that this particular civil-litigation situation will be repeated.[7] Second, as the Supreme Court has noted, "[m]ore often than not, criminal trials will be of sufficiently short duration that a closure order 'will evade review, or at least considered plenary review in this Court.' "

---

[6]We recognize that the second element of the capable-of-repetition exception to mootness is similar to the reasonable-expectation-of-recurrence element of mootness. *See Jews for Jesus,* 162 F.3d at 629 n. 4 (concluding that holding of no reasonable expectation of recurrence precludes application of capable-of-repetition doctrine). We will analyze the arguments separately because Judge Kaye makes different arguments about why this case has a reasonable expectation of recurrence and why this case is capable of repetition yet evades review.

[7]The facts of the underlying *Engle* litigation seem unique. The litigation was brought against the five largest tobacco companies in the country, was the first smoker-injury class action to reach a jury, and resulted in the largest damage award in United States' history. *See* Gordon Fairclough & Milo Geyelin, *Tobacco Companies Rail Against Verdict, Plan to Appeal $144.87 Billion Award,* Wall. St. J., July 17, 2000, at A3.

*Richmond Newspapers* 100 S.Ct. at 2820 (quoting *Nebraska Press,* 96 S.Ct. at 2797); *see Globe Newspaper,* 102 S.Ct. at 2618; *see also* U.S. Const. Amend. VI; 18 U.S.C. § 3161 (Speedy Trial Act); *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 994, 18 L.Ed.2d 1 (1967). Therefore, a gag order in a criminal case may be more likely to evade review than one in a civil case.

Even when we suppose that the capable-of-repetition exception can apply to gag orders in civil cases, the peculiar facts of this case do not support applying the capable-of-repetition exception here. Even though Florida state trial judges may in the future issue similar gag orders in civil cases, that challenged act is not necessarily "in its duration too short to be fully litigated prior to cessation or expiration." *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curium). This particular appeal has become moot—and thus, evades review—not because of the nature of the challenge, but because of the inaction of the parties. *Cf. Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 1699-1700, 40 L.Ed.2d 1 (1974) (economic strikes, by their nature, do not generally last long enough for appellate review of controversies); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973) (pregnancy's duration of 266 days would not allow time for appellate review). Therefore, we will not apply the capable-of-repetition exception to avoid mootness.

In the cases cited by Judge Kaye, the media (who, like the media in this case, were not parties to the underlying litigation), immediately challenged the gag orders through a variety of judicial avenues and often became parties to the litigation. *See Richmond Newspapers, Inc.,* 100 S.Ct. at 2819-20 (in state court, media sought hearing on motion to vacate closure on same day order issued; moved to intervene, which was granted; petitioned state supreme court for writ of mandamus and prohibition; and filed appeal from trial court's closure order); *Nebraska Press Ass'n,* 96 S.Ct. at 2795-96 (in state court, day after gag order entered, media moved to intervene at trial court; 8 days later petitioned district court to stay order, applied to state supreme court for writ of mandamus, a stay, and expedited appeal); *Foxman,* 939 F.2d at 1505-6 (in state court, within 18 days of gag order, media filed motion for rehearing at district court, petitioned state court of appeals for certiorari review, and moved to stay restrictive order; when court of appeals did not respond within 60 days of filing of last brief, media filed in federal court). *Cf. Unabom Trial Media Coalition v. U.S. Dist. Ct. for the E.D. of Cal.,* 183 F.3d 949, 953 (9th Cir.1999) (concluding case unlikely to evade review where media delayed objections to district court's closure orders and did not seek expedited review).

In contrast, the parties in this appeal did not respond quickly to the gag order or exercise all judicial

avenues to challenge the gag order or to defend the gag order speedily against challenges once they were made. The media never moved to intervene at the state trial court (either when the gag order was first announced or a year later when the tobacco companies moved to vacate the gag order), made no state motion to stay the gag order, nor sought any mandamus relief from the state supreme court.[8] Instead, the media waited a year and a half before filing for injunctive relief in federal court. Also, no party moved for expedited review in state or federal court.[9] Had the parties responded immediately, we (or the Florida Supreme Court or the United States Supreme Court) may well have been able to complete review of the gag order before the case became moot. *See Foxman,* 939 F.2d at 1507 (noting that gag order evaded review because neither state courts nor federal courts completed review before gag order vacated, even though media challenged gag order immediately). *Cf. Wakefield v. Church of Scientology,* 938 F.2d 1226, 1230 (11th Cir.1991) (concluding media's unsuccessful efforts to unseal court files and gain access to contempt proceedings not of short duration given long period of protracted civil litigation and media's failure to intervene or appeal until late in litigation).

In short, the capable-of-repetition exception does not apply. We cannot say that this kind of state gag order is inherently too short in duration to allow for complete review. We are unconvinced of an inherent problem, given the parties' particular failures to respond quickly and resourcefully to Judge Kaye's gag order and to the subsequent federal challenge to the state gag order. That future cases similar to this one will escape review—applying, in those cases, ordinary "case and controversy" standards—is simply too doubtful.

C.

Even though we conclude that the appeal is moot, the media argue that we should follow our "usual practice" and only dismiss the appeal, leaving intact the district court's federal order preliminarily enjoining Judge Kaye from enforcing the gag order. We recognize that sometimes, when reviewing a preliminary injunction, we have dismissed only the appeal without vacating the federal district court's order. But in those situations, the preliminary injunction by its own terms had expired. *See, e.g., Brooks v. Georgia St. Bd. of*

---

[8]These facts are also pertinent to the *Younger* analysis, which we will not address based on our conclusion of mootness. But these facts are pertinent to the mootness analysis for a different purpose: not to argue that the media must exhaust state remedies before taking advantage of the mootness exception, but instead to argue that the media did nothing for a year and that this kind of case is not inherently one capable of repetition yet evading review.

[9]We note that appeals on expedited review may be resolved in relatively short order. *See, e.g., Suntrust Bank v. Houghton Mifflin Co.,* 252 F.3d 1165 (11th Cir.2001) (expedited appeal reversing grant of preliminary injunction 35 days after district court issued order).

*Elections,* 59 F.3d 1114, 1122 (11th Cir.1995); *Tropicana Products Sales, Inc. v. Phillips Brokerage Co.,* 874 F.2d 1581, 1582 (11th Cir.1989).

We have also said, based on principles of equity, that "[w]here a case becomes moot after the district court enters judgment but before the appellate court has issued a decision, the appellate court must dismiss the appeal, vacate the district court's judgment, and remand with instructions to dismiss as moot." *Bekier v. Bekier,* 248 F.3d 1051, 1056 (11th Cir.2001) (internal citations and quotation omitted); *see also Ethredge v. Hail,* 996 F.2d 1173, (11th Cir.1993) (concluding preliminary injunction moot and, thus, vacating district court order to "prevent the district court's opinion from spawning precedential[10] consequences").

We do not have a proper case now to consider the issues of *Younger* abstention and the First Amendment. In this case, the mootness seems more attributable to the inaction of the media than to Judge Kaye (although he never sought an expedited appeal nor sought a stay of the federal order pending appeal). And, because the federal district court order favors the media, equity favors vacating the federal order in these circumstances. *See United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950) ("When [the procedure of vacating a moot order] is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary."); *see also U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 115 S.Ct. 386, 391-92, 130 L.Ed.2d 233 (1994); *Bekier,* 248 F.3d at 1056.

Moreover, the command of the district court's federal order—enjoining a state judge (who was directing only parties before him in an ongoing state case about their conduct relative to that case) and potentially subjecting the state judge to criminal contempt proceedings in federal court, *see Hoover v. Wagner,* 47 F.3d 845, 850-51 (7th Cir.1995)—is extraordinary. For these reasons, we will follow the more cautious approach and vacate the federal district court's order, nullifying it altogether.[11] *See Troy St. Univ. v. Dickey,* 402 F.2d 515, 516-17 (5th Cir.1968).

So, we DISMISS this appeal for lack of jurisdiction, VACATE the preliminary injunction, and

---

[10]We note that generally district court decisions are only persuasive authority and have no binding precedential authority beyond the case in which they are entered, and not always in that case. *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.,* 240 F.3d 956, 965 (11th Cir.2001). But we mean for this unreviewed federal order to have no collateral or future consequences at all.

[11]Where only a preliminary injunction is on appeal, we only have the authority to vacate that federal order. *See Ethredge,* 996 F.2d at 1175-76. Although we think that the entire case may be moot, that determination ultimately rests with the district court. Other issues may remain "live" that are not before us on appeal.

REMAND for further proceedings consistent with this opinion.